The first case today is number 25-1266 and number 25-1280, United States v. Samuel Montronde. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, your honors. Mark Shea for Appellant Sam Montronde. I have to please the court. Judge Rickleman, may I reserve one minute for rebuttal? You may. Okay, thank you. So what I'd like to point to starting out is the emails and why they're of such great import here and that it's not your typical objection to emails or authorship of emails. And the reason I say that is if you look at the original indictment itself, paragraph 10, page 3 of the original indictment and even page 3 of the government's brief, what they say there is that Bambi, meaning Priya Bambi, authored, created the email address Samuel at Evoluzione. So this isn't a typical case where my client, Mr. Montronde, has an email address and then the question is, did he send the emails? What's going on here is that literally, and it's acknowledged as I said in the indictment, it's Bambi who creates the email address. And so the danger here and throughout the trial was that these are let in and I consistently objected to them and the judge gave me a running objection to them. They let in these emails as if they're actually authored by Samuel Montronde. Let me ask you a question about that because the question of whether they come in seems separate from what you and the government could argue about what the emails meant. And what the government says in its brief is the emails were recovered from essentially the computers of the company. And so they were business records, well established exception to the hearsay rule, therefore easily authenticated by the custodian of the business records. And so they come into evidence. Whether the jury thinks they represent what the government says or what you think they represent, that was an issue you could argue and the jury ruled against you. Why is that wrong? Don't they at least get to come into the trial under the business record exception to the hearsay rule? Certainly. Well, one I just touched upon, it's a kind of tortured, you know, it was a very strange case in the sense that the emails are produced by a private entity. And so it was limited how much I could track where they came from. So meaning like where the server was at the time. And the government relied on Takeda. But to answer you more specifically, I think under Federal Rule 901A, it requires a proponent to produce evidence sufficient to support a finding that the item is what the proponent claims it is. Now, I don't think, if we just stopped at it's an email, then I guess it would be what the proponent claims it is. But to me, what they're really claiming here and what makes it relevant, which was what would make it admissible, is that it's an email from Sam Montron because they're using it to establish his intent and his participation in the fraud. That's no different really than every case, right? There's always, you're bringing in the email, or not always, but often the case that you're bringing in the email for the purpose of proving something about the person who sent it. But as long as you verify that this is an authenticated document, so then it's a question of testimony as to whether or not he really authored it. And presumably you put forward testimony that he did not author it and there's testimony to the contrary. That's, I think we've that's for the jury to decide. Except, I just think, especially when we look going forward, like this is the precedent of allowing the government to put in emails that it knows are from an account created by somebody else in my client's name is an extraordinary dangerous one, particularly if we look forward to, say, AI and things like that. And why doesn't that fall within the business record exception? Well, I would say it doesn't fall within the business record exception because it's supposedly a business record kept by Takeda, who Sam Montron doesn't work for, who Sam Montron's email isn't affiliated with, and Sam Montron didn't create the record. And so you have someone who, it becomes a business record in theory because Miss Bambi, who is the actual fraudster, works for Takeda. So it effectively allows someone who works at the Takeda to rope Sam Montron, who doesn't even have work for Takeda, into having a business record at Takeda. And I would also just point to, on the self-authenticating issue, the government pointed to U.S. v. Spillett in the 11th Circuit, and it says, self-authentication does not absolve the proponent of the email of the content from the burden to prove the statements are admissible. And to me, the content of the statements shouldn't be admissible unless they are actually from Sam Montron. Why would that be? The alleged fraud was of Takeda. The government extracts these emails from Takeda's servers and they are authenticated as business records of Takeda. As we know, businesses have so many emails that are part of their records, and so the document comes in as a business record of Takeda. And then again, it would be up to you and the government to argue about, what does this document mean? How is it created? But it was sent to Takeda. It's on their servers. They receive it in the regular course of business. So what's wrong with that? Well, first, I want to correct. The government didn't download anything. It was Takeda downloaded from their servers, provided it to the government, and then that limited the amount of search I could do because what the government's providing me isn't actually a full image of the computer, which would allow me to see, because part of what I would argue, if it were actually provide a full thing of the computer provided by the government, I could try and track addresses or connections, connectivity even too, to see where the email was sent from, right? But I didn't have that. Let me ask you this just because I want to make sure I understand your argument. Do you have any reason to doubt or to contest that you brought up in the record to the district court that these emails were in fact business records that Takeda had on its servers? Do you have any reason to contest that just so we understand? No, I have no reason to contest that they were on Takeda's servers. But I guess what I'm saying though is if we're then left with, I'm supposed to prove that what is acknowledged as a fraudulent account set up by the fraudster at Takeda to put things on Sam, and that I have to then show that it's not Sam or Mr. Montron, then yet Takeda just provides what it wants to the government and I am limited in how I can defend that. Just to let that in is so damaging. I think we need to try and picture if we were actually in the seat of Sam Montron and the person creates an email address purporting to be you. Did the district court really put the burden on you to prove that Mr. Montron was not the author of the email? Wasn't it that the government had to carry its burden to prove that Mr. Montron was the author and they put forward evidence and you contested that and the jury made its determination. So it wasn't really your burden, was it? Well, I would say it was. I'd point to my closing argument and that's in appendix 2 at 396, 397. But what I was doing there was having to show, I ran parallel the text messages and the email messages on this supposed meeting that Sam was supposed to be at, and it showed that Sam had no meaning on the text messages. It showed that Sam had no idea that there was a meeting, even though the email, Sam at Evolucione, was originally on the meeting list. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce herself on the record to begin? Good morning. May it please the court, Alexia Di Vincentis for the government. Evidence of authorship is only required to authenticate a document to the extent that the relevance of the document depends on a particular person having written it. That is absolutely not the case here. It was actually undisputed at trial that either Bambi or Montron sent those emails. And I will in fact point out that at appendix volume 2, pages 336 and 389, the defendant admitted on the stand that he sent some of the emails. And to the government though, it didn't matter whether the emails were sent by Bambi or they were sent by Montron, because either way, they were emails sent in furtherance of the scheme to defraud and were relevant and admissible on that basis. That is why the government merely offered these emails as emails sent from the Samuel or Jasmine accounts without suggesting that any particular person authored them. And in fact, with government witnesses confirming on the stand that they had no idea who in fact authored the documents. That's also why the testimony of the witnesses who received the documents and the business record certification were sufficient to authenticate them and allow them into evidence. I will note that the defendant here today has raised a number of arguments about what he was or wasn't able to obtain in terms of the information from the Takeda servers. You'll note that that is not an argument that's made in the opening brief. There is no freestanding claim there. And so any such claim would be waived. I am more than happy to address any of the other issues in the case if your honors have any questions. Could you address the restitution issues and the acquitted conduct arguments and sort of the constellation of issues around that? Sure. So there seems to be a common thread to a lot of the defense arguments here, which is this idea that the acquittal on the conspiracy account impacts the analysis on these claims. Obviously, for purposes of sufficiency, the acquittal is irrelevant. That's done, pal. We agree that when you turn to the loss calculation under the sentencing guidelines, the fact of the acquittal does implicate the acquitted conduct amendment that took effect in 2024. But the district court supportably found on this record that the acquitted conduct established in part the offense of conviction. That is the scheme that went to fraud counts. And really, that is the only rational view of this record. The conspiracy and the scheme that are fraud were charges to coextensive things if you look at paragraphs 8 through 27 of the indictment. And then the defendant admitted on the stand that he signed the statement of work, a statement of work that sets forth the deliverables and the dates and the amounts associated with them to the sum total of the contract. After he signed the statement of work, he and Bambi exchanged text messages about what they would need to do to bill Takeda, specifically saying that they would need to create a template that they would then send to Takeda per the schedule. The monies were then deposited into accounts that Montronde personally opened and solely controlled. And moreover, the monies that are coming in, the two particular payments that weren't charged as wires because they were made by a check at a period of time in which the accounts were being changed, the Avalosione accounts, those occurred smack in the middle in between the June payments that were charged and the October payment that was charged. So it's not even like on this record, the jury could have thought that those occurred at a time when perhaps Montronde wasn't yet in on the scheme. And that's the difference for the calculations between you and the defendant, is that right? Correct. He says there was only about $1.6 million that came through on wires, but the missing number in between is just what was paid by check. So what the defendant is arguing is that he is only responsible for the $1.38 million that were in the charged wires. But the total amount that went to the accounts that he opened and controlled was $2.3 million. And then the intended loss, the full scope of the contract was the $3.5 million. So the evidence amply supported the district court's determination here that the conduct established in part the offense of conviction. And unless the court has any further questions, the government will rest on its brief. Thank you. Thank you, counsel. At this time, counsel, for the appellant, please reintroduce yourself on the record. You have a one-minute rebuttal. Thank you. Mark Shea for Sam Montronde. So as to the restitution, I just point out that what about $1 million or $920,000 is from Bambi reaching back to try and get optimum money before that Sam doesn't even know about. And that's laid out, I think, in the government's statement of the facts right at the beginning. And so the other thing is, as to the optimum letter, this all prejudices my client, too, because the optimum letter, they have the initials and purport it to be from Sam Montronde. But we know it's not from Sam Montronde because she is, meaning Ms. Bambi, is trying to loop in optimum to go back a fiscal year and grab an extra million bucks. And that's in the government's statement of the facts before Sam is even told of the, quote, scheme. And that's why it's so damaging to let the optimum letter in. And one last thing. The thing that's relevant to why we're calling into question the conviction at all is because the first two wires, which he is convicted of, I think are for the directly from the optimum letter. And so the letting in of this optimum letter purported to be his, which isn't from him, links him to the two counts of conviction on the wire fraud, which I think is an injustice. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.